NO. 07-09-00391-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 15, 2010

ANTHONY C. PARSON, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2009-423,019; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Anthony C. Parson, was convicted of attempted[1] burglary of a habitation with intent to commit murder or aggravated assault.[2] The indictment included punishment enhancment allegations of two prior felony convictions.[3] At the punishment hearing, appellant pleaded true to the enhancement allegations in the indictment and the jury assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for 50 years. Appellant subsequently filed

---

[1] See TEX. PENAL CODE ANN. § 15.01(a) (Vernon 2003).

[2] See id. § 30.02(a)(1) (Vernon 2003).

[3] See id. § 12.42(d) (Vernon. Supp. 2010), § 30.02(d) (Vernon 2003).

this appeal contending that the evidence was legally insufficient to support the conviction and that the trial court had committed reversible error in allowing the State to introduce evidence of an extraneous offense. We will affirm the conviction.

## Factual and Procedural Background

Appellant and Kathleen McCullough, the victim, had previously had a dating relationship. Appellant and McCullough had broken up before the events of October 10, 2008. Earlier in the day on October 10, before the events that resulted in appellant's conviction, McCullough was doing her laundry at a laundromat when appellant came in and began yelling at McCullough. According to McCullough's testimony, appellant continued walking toward her and threatening her. McCullough stated she was backing away from appellant when he grabbed her keys. He then left the laundromat in the truck she had borrowed from her brother. McCullough called a relative who came to the laundromat and took her back to her apartment. Upon arriving at her apartment, McCullough found the front door unlocked. While McCullough was trying to determine if it was safe to go into her apartment, appellant drove up in the truck. Appellant again began shouting at McCullough and was threatening her. After a short time, appellant left the apartment complex. McCullough eventually went inside her apartment.

A few hours later (the record is not clear as to exactly how much time passed) appellant again returned to the apartment complex. Appellant went to McCullough's apartment door and tried to gain entry. Upon finding the door locked he began to beat and kick on the door and shout threats at McCullough. McCullough became afraid for her safety and called 911. While talking to the 911 operator, McCullough heard a

2

window break, and she retreated to the closet. At some point, McCullough heard more windows being broken and specifically heard appellant say, "Bitch, I'm going to kill you."

The police arrived in response to the 911 call and found appellant outside the apartment. Appellant was detained and placed in the back of Officer Travis Denson's police car. When appellant was placed in the rear seat of the police car, Denson activated the video recording device and placed the camera so as to record appellant. A copy of the video was played for the jury. In the video, appellant continued to curse and threaten McCullough. Upon going back to the door of the apartment, Denson observed that the couch had been pulled in front of the door and, upon entry, observed the broken windows.

Denson then made the decision to arrest appellant and transport him to the City of Lubbock holding facility. During transportation to the city holding facility, appellant continued to threaten to kill McCullough. Upon arrival at the city facility, appellant got into a fight with two other inmates. This fight was the subject matter of the extraneous offense of assault that the trial court allowed into evidence before the jury. Appellant's trial counsel objected to the introduction of the extraneous offense. However, the trial court overruled the objection and allowed the testimony before the jury.

The jury subsequently convicted appellant as charged in the indictment and sentenced him to serve 50 years in the ID-TDCJ. Appellant appeals contending that the evidence is legally insufficient to prove that appellant had the requisite intent at the time of the attempted entry into the apartment. Additionally, appellant contends that the trial

3

court abused its discretion in allowing evidence of the extraneous offense to come before the jury. We will affirm the judgment of the trial court.

## Legal Sufficiency of the Evidence

Appellant's first issue contends that the evidence was legally insufficient to sustain the judgment. Specifically, appellant challenges the legal sufficiency of the evidence to prove the requisite intent of appellant at the time of the attempted burglary.

### Standard of Review

A legal sufficiency review consists of reviewing the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). However, the jury is the sole judge of the weight and credibility of the evidence. Clewis v. State, 922 S.W.2d 126, 132 n.10 (Tex.Crim.App. 1996) (citing Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991)). We resolve inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. Guevara v. State, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). Furthermore, the standard of review is the same for both direct and circumstantial evidence. Id.

4

Analysis

In order to convict for the offense of attempted burglary of a habitation with intent to commit murder or aggravated assault, the State must prove that appellant attempted to enter McCullough's habitation without her effective consent with the intent to commit the offense of murder or aggravated assault. There is no argument from appellant regarding the elements of attempt, consent, or habitation. Appellant specifically argues that there is legally insufficient evidence of his intent to commit murder or aggravated assault. Accordingly, our analysis will be confined to that area of the evidence.

When considering the question of intent to commit the act charged, we must first realize that a person's intent is within his own mind. See Norwood v. State, 135 Tex.Crim. 406, 120 S.W.2d 806, 809 (1938). Next, in an effort to ascertain intent, we may look to the outward expression of that intent through the words, acts, and conduct of the individual in question. Id. Finally, it is from all of these circumstances that we determine his intent. See Smith v. State, 965 S.W.2d 509, 518 (Tex.Crim.App. 1998) (citing Gray v. State, 55 Tex.Crim. 90, 114 S.W.635, 645-46 (1908)).

When these considerations are applied to the facts of this case, we find that the record reveals: 1) appellant accosted McCullough on two occasions on the day in question; 2) each time appellant approached McCullough, he did so in a threatening manner stating it was his intent to harm or kill her; 3) appellant was detained outside of McCullough's apartment while shouting threats; 4) the windows had been broken out of McCullough's apartment, and entry had been attempted by kicking the door in; 5) McCullough recognized appellant as the one attempting to get in the apartment; 6) after

5

appellant's arrest, he continued to make threats to kill McCullough. In short, from the observation of appellant's conduct and speech, a rational jury could have concluded beyond a reasonable doubt that appellant intended to kill or seriously injure McCullough. See Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Therefore, the evidence was legally sufficient. See Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Appellant's first issue is overruled.

## Extraneous Offense

Appellant's last issue deals with the trial court's admission of extraneous offense testimony. The trial court permitted the State's attorney to ask Denson if appellant had assaulted two other inmates upon arrival at the City of Lubbock holding facility. Appellant contends that the admission of the evidence was an abuse of discretion because such testimony was not relevant, and even if relevant, its probative value was clearly outweighed by its prejudicial impact.

### Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. See McCarty v. State, 257 S.W.3d 238, 239 (Tex.Crim.App. 2009). A trial court abuses its discretion when the decision to admit the evidence in question lies outside the zone of reasonable disagreement. Id.

### Law of Extraneous Offenses

As a legal maxim, extraneous offenses are not admissible during a criminal trial, especially to prove the character of a defendant and that the defendant acted in

6

conformity with that character trait at the time in question.  See TEX. R. EVID. 404(b).[4]

There are exceptions to this general prohibition.  Specifically, extraneous offense evidence is admissible if it tends to prove or disprove an element of the offense.  See De La Paz v. State, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009).  This is the inquiry into the relevance of the evidence.  See Rule 404(b); De La Paz, 279 S.W.3d at 343.  The proponent for admissibility of the extraneous offense evidence must carry the burden of establishing the admissibility of such evidence.  See Montgomery v. State, 810 S.W.2d 372, 387 (Tex.Crim.App. 1991) (op. on reh'g).  Once the relevance is established, the evidence may still be excluded if its probative value is substantially outweighed by its unfair prejudicial effect.   Rule 403; Santellan v. State, 939 S.W.2d 155, 169 (Tex.Crim.App. 1997).

If a rule 403 objection is made, the trial judge must then conduct a balancing test to ascertain whether or not the probative value is substantially outweighed by the prejudicial impact of the proffered extraneous offense.  Id.  In conducting this balancing test the trial court considers the following: 1) how compellingly the extraneous offense evidence serves to make the fact of consequence more or less probable; 2) the potential for this evidence to impress the jury in some irrational but indelible way; 3) the time required to develop the evidence; and 4) the force of the proponent's need for the evidence. Id.

---

[4] Further reference to the Texas Rules of Evidence will be by reference to "Rule __" or "rule ___."

Analysis

Our first inquiry is whether or not the proffered extraneous evidence is relevant. Rule 404(b); De La Paz, 279 S.W.3d at 343. A review of the record reflects that the State had a substantial amount of evidence that bore upon the intent of appellant to murder or assault McCullough at the time he attempted the unauthorized entry into the apartment. Further, the quality of the evidence in demonstrating the intent of appellant was much more direct and persuasive than evidence of assaults involving strangers at some time removed from the events that led to appellant's arrest. A further review of the closing arguments reveals that even the proponent of the evidence must have thought that it was not particularly important, for it is barely even mentioned during those arguments. What was the relevance of this evidence, especially in light of the entire record? Our review yields the conclusion that this extraneous offense evidence was only minimally relevant. For purposes of this opinion, we will treat the evidence as relevant, as it did have some propensity to prove the element of intent. See De La Paz, 279 S.W.3d at 343.

Therefore, we now turn to the balancing test pursuant to rule 403. Santellan, 939 S.W.2d at 169. Our first inquiry into the strength of the evidence results in a determination that the evidence in question, a subsequent assault of other inmates at a time after the offense being considered, is only minimally compelling. See id. In addition, we find the force of the State's need for this evidence to be barely above negligible. See id. The presentation of the evidence required only a minimal amount of time, and, to that extent, did not detract the jury from the real issues at hand. See id.

8

However, when you review the entire record, the most that can be said for this extraneous offense evidence is that it proved appellant's propensity to be aggressive and perpetrate assaults. Thus, it did have the potential for impressing the jury in an irrational but indelible way. See id. As such, this evidence should not have been placed before the jury and to do so was error. Rule 403.

However, our finding that the admission of the evidence was error does not end the inquiry. Rather, we must continue the inquiry to determine whether the admission had an effect on appellant's substantial rights by a Rule 44.2(b) harm analysis for non-constitutional errors. See TEX. R. APP. P. 44.2(b);[5] Haley v. State, 173 S.W.3d 510, 518 (Tex.Crim.App. 2005). A substantial right is implicated when the error had a substantial and injurious effect on the jury's verdict. Haley, 173 S.W.3d at 518. In order to ascertain the effect the error may have had on the jury's verdict, we are directed to consider everything in the record, including all of the evidence received by the jury and how the alleged error might be considered in connection with other evidence supporting the verdict. See id.

When we apply the analysis required to the facts of this case, we find that we have a significant amount of evidence that went to the issue of appellant's intent.

_____

[5] Rule of Appellate Procedure 44.2 provides:

(a) Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b) Other Errors. Any other error, defect, irregularity, or variance that does not affect the substantial rights must be disregarded.

Further, the proponent of the evidence in question mentioned the objected-to evidence only minimally during closing arguments. A complete review of the evidence leads us to the conclusion that the error in admitting the evidence of the assaults at the city holding facility did not affect appellant's substantial rights. See Rule 44.2(b). Therefore, the error was harmless. See Haley, 173 S.W.3d at 518. Accordingly, appellant's final issue is overruled.

## Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.